OPINION OF THE COURT
W. Patrick Falvey, J.
This is a petition for a special proceeding under General Obligations Law, article 5, title 17 for an order approving the transfer of structured settlement payment rights from the payee, Erika Hall, to petitioner. The structured settlement resulted from an action brought on payee’s behalf while she was an infant against the owner and operator of a boat. Payee was seriously injured in the underlying boating accident. Petitioner, contrary to the requirements of the law, already paid the payee $25,000 on an undisclosed date prior to commencement of this action, in exchange for certain future payments. Petitioner asks the court to confirm this sale. The payee would sell $500 per month of her monthly payments of $2,113.66 from the John Hancock annuity (issued and funded by John Hancock Assignment Company and John Hancock Life Insurance Company), starting December 22, 2014, and continuing for 144 months, through November 22, 2026. According to the petition, petitioner had previously requested its attorney, Paris & Chaikin, PL.L.C., to file an application seeking a judicial qualified order approving the transfer of future structured settlement payments from transferor, Erika Hall. “The application was mistakenly believed to have been prepared and filed with this Court, but in fact was not. Unaware of this, Petitioner J.G. Wentworth, tendered to transferor the purchase amount in accordance to the Transfer Agreement, to wit, $25,000.” (Petition para 21.) Payee’s affidavit in support, provided with the petition, was executed November 6, 2012, a year before the order to show cause and petition herein were filed November 7, 2013.
According to the November 6, 2012 affidavit payee was 19 years old at that time, single with no minor dependents, *839 unemployed, and seeking work. She loaned a total of $15,000 to four separate people who have not reimbursed her. She purchased four vehicles over the past two years, two of which were lemons ($60,000 spent), three for her personal use, and one for her ex-boyfriend, who stole funds with her credit card. She does not state how much the boyfriend stole from her using her credit card. She states the boyfriend also stole $5,000. She does not state whether she filed criminal charges against the ex-boyfriend and if so the status of same.
The payee further states in her November 6, 2012 affidavit that she is experiencing extreme financial hardship and needs the funds to better her financial standing until she finds full-time employment. She says she received the first payment from her settlement on her 18th birthday, but does not state how much she received. She avers that she purchased a home and mortgage for $88,000. In her affidavit she says:
‘T serve as third party mortgage holder for this house, however, I’m now paying $500 per month because the seller refuses to make the agreed upon payments to me. I need to use $15,000 of the money from this transaction to pay my mortgage bills until I am able to find an alternative solution to this conflict.”
There are no documents attached to her affidavit to explain these statements. The court does not know whose name the property is in, if there is a deed or a land contract, who the seller is, what Ms. Hall means by saying she is the third-party mortgage holder, who she is making the $500 payments to, what the purchase price of the home was, who holds the mortgage, the amount of the mortgage, when these transactions took place, and the names of all parties to these transactions.
The payee asserts she has monthly expenses of $1,070 for utilities, living expenses, rehabilitation fees, electric, water and sewer, cell phone, car insurance, cable, and county and school taxes. She had less than $1,000 in her bank account so she planned to use the $10,000 after paying the $15,000 for her mortgage bills to catch up on her bills and live comfortably until she found a job.
The disclosure statement dated October 4, 2012 shows petitioner is purchasing 144 monthly payments of $500 each, beginning on December 22, 2014 and ending November 22, 2026. The aggregate amount of the purchased payments is $72,000. The discounted present value at the federal interest *840 rate of 1.2% is $65,366.62. The gross amount paid to the seller is $25,000 and there will be no other expenses to her. Thus, the net amount is $25,000. The net amount represents 38.2% of the estimated current value of the payments based upon the discounted value using the applicable federal rate. Petitioner received a price quote from John Hancock Life Insurance Company, the company providing the annuity to the payee, that the current cost of purchasing a comparable annuity for the aggregate amount of payments to be transferred is $63,246. Based on the net amount being paid, and timing of the structured settlement payments, this is the equivalent of interest payments by the payee to petitioner at a rate of 15.53% per year. Petitioner asserts that the payee received the disclosure statement at least 10 days prior to execution of the agreement, detailing the terms of the agreement. Ms. Hall signed the disclosure statement and returned it to petitioner and fully understands it. Petitioner asserts that it has complied with the disclosure requirements of the law.
The statement of professional representation signed by the payee on October 18, 2012 states that she was advised by petitioner to obtain independent professional representation concerning the legal, tax and financial implications, and she does not wish to seek such representation.
The underlying January 3, 2011 infant settlement order from US District Court Judge Larimer provides for a structured settlement, with present cash cost of $1,500,000 to the carrier for one of the defendants and a cost of $300,000 to the other defendant’s carrier. The settlement agreement called for an initial $202,513.86 deposit into a guardianship account with the natural parent to be held in trust until the payee turned 18, to cover uncovered medical expenses. Any amount remaining when the payee turned 18 on September 22, 2011 was to be released to her. However, the payee’s affidavit does not state how much of these funds were used for medical expenses or how much she received, nor does she coherently state how much of the funds had been spent at the time of her November 6, 2012 affidavit in support of this application.
The structured settlement provides that the payee will receive $2,113.66 per month for 40 years beginning September 22, 2014 through the structured settlement annuity with John Hancock Life Insurance, the subject of this action, and an additional $2,211.48 per month for 40 years also beginning September 22, 2014 through another structured settlement annuity with *841 Prudential Life Insurance Company. This action seeks approval of the transfer agreement signed by the payee on October 18, 2012 which provides that $500 of the $2,113.66 per month structured settlement payments from the John Hancock Life Insurance annuity be paid to petitioner commencing with the December 2014 payment. After deducting $500 from the monthly payments of $2,113.66 proposed to be paid to petitioner herein, the payee would still have $1,613.66 per month paid to her from the annuity with John Hancock.
The structured settlement order also states that “any attempt to sell, transfer or assign any part of the settlement shall require a showing of extreme, unforeseen and uncontemplated financial hardship before the court, in addition to such other and further requirements as may be imposed under Section 5-1706 of the General Obligation Laws of NY.” Further, the underlying settlement agreement executed by the payee’s mother as guardian for her at the time also contained this language requiring extreme, unforeseen and uncontemplated financial hardship before any part of the structured settlement payments may be sold.
The two John Hancock companies issued and funded the annuity that provides the structured payments that are the subject of this application. John Hancock has provided information concerning a fraud perpetrated by an employee of petitioner’s law firm, Paris & Chaikin, in regard to this and other structured settlement transfer cases. Petitioner received fake documents from Paris & Chaikin, leading petitioner to believe that this court had approved the transfer, and so petitioner paid Ms. Hall $25,000. John Hancock in turn accepted copies of a fake petition and order, which showed an application before this court, and resulting order. The petition was never filed with this court nor did the court sign said order. In addition, the index number appearing on the documents was also fabricated.
The court notes that the John Hancock companies as structured settlement obligor and annuity issuer are protected under General Obligations Law § 5-1707 if the court approves the transfer, and they have consented to the late transfer.[1] The *842 obligor has not yet commenced payments under the structured settlement as the first payment is to be made September 22, 2014.
In reviewing an application under General Obligations Law, article 5, title 17, the court must first determine if the application complies with the procedural requirements of General Obligations Law § 5-1701 et seq.
The petitioner has provided proof of service of the order to show cause and petition on all interested parties by November 13, 2013, as required by the order to show cause, to wit: 20 days before the return date. (General Obligations Law § 5-1705 [c].)
The court must determine if the payee has received the required disclosure at least 10 days prior to signing the contract of sale. (General Obligations Law § 5-1703.) The payee signed the disclosure statement, but no date is stated when she signed it. There is a provision in the disclosure statement that says that by signing it she confirms she received the disclosure statement at least 10 days prior to signing the transfer agreement. She signed the transfer agreement on October 18, 2012. However, petitioner has not provided independent proof, such as a signature for receipt of a certified letter, of the date the payee received the certified mailing of the disclosure statement, which must have been at least by October 8, 2012.
The disclosure is to contain a price quote from the original annuity issuer, or, if not available, from two other annuity issuers, reflecting the current cost of purchasing a comparable annuity for the aggregate amount of payments to be transferred. (General Obligations Law § 5-1703 [d].) Here, there is a price quote from the initial issuer that the current cost of purchasing a comparable annuity for the aggregate amount of payments to be transferred is $63,246. The discounted present value of the payments sold is $65,366.62, using an applicable federal rate of 1.2%. Additionally, the disclosure lists a gross price of $25,000, and the same net price.
The disclosure also is to state an itemized listing of all commissions, fees, costs, expenses and charges payable by the seller, and the total amount of such fees. (General Obligations Law § 5-1703 [f].) The disclosure here states there are no expenses incurred by Hall.
*843 The following required documents have been attached to the petition: the transfer agreement; the disclosure statement (although petitioner has not provided independent proof of timely notice of that statement to Erika Hall, as described above); a list of payee’s dependants and their ages (none); and a statement setting forth whether there have been any previous transfers or applications for transfer, giving details of any such transfer. (General Obligations Law § 5-1705 [d].) The petition did not clearly state the matter of the fraud by the employee at Paris & Chaikin and the court only first became aware of this when it received the submissions from John Hancock.
Next, the court is to determine whether the proposed transfer is in the best interest of the payee, taking into account the welfare and support of payee’s dependents, and whether the transaction including the discount rate used to determine the gross advance amount and the fees and expenses used to determine the net advance amount are fair and reasonable. “Provided the court makes the findings as outlined in this subdivision, there is no requirement for the court to find that an applicant is suffering from a hardship to approve the transfer of structured settlement payments under this subdivision.” (General Obligations Law § 5-1706 [b].)
But here, the settlement agreement itself and the order approving the settlement both require a showing of extreme, unforeseen and uncontemplated financial hardship. Thus the court must view the application at this higher standard. Since this present application is based on Erika Hall’s affidavit from November 6, 2012, and would have been the first since her settlement, the court will review this application as if it is the first.[2] The court must consider and determine whether the transaction is in the best interests of the payee, and whether the transaction, when viewed as a whole, is both fair and reasonable in all respects. The court in doing so has considered the following:
• The physical age, level of maturity, and physical and mental capacity of the payee. The payee is now 20 years old, with a severe physical disability. She has not stated her level of education.
*844 • The payee’s ability to earn a living and to support her dependents. She has no dependants. She had been trying to obtain work, but had not found any. However, she has not specifically set forth her efforts in this regard.
• The payee’s intended usage of the proceeds. The payee has not shown an immediate need for the money in view of the lump sum she received September 22, 2011. (See Matter of 321 Henderson Receivables Origination LLC, 19 Misc 3d 504 [Sup Ct, Queens County 2008].) She has not stated how much of the initial lump-sum payment she actually received, but assuming she received it all, i.e., $202,513.86, it appears that it was spent as follows:
- 15,000 loans to four people who never paid her back,
- 60,000 purchase of four vehicles,
- 5,000 stolen by her boyfriend,
- 88,000 purchase of house, and
- 14,980 monthly expenses for 14 months, leaving $19,533.86 in unaccounted for proceeds.
She planned to use $15,000 of the $25,000 she received to pay her mortgage, and the remaining $10,000 to catch up on her bills and for ongoing living expenses.
• The payee’s present financial situation and whether she is laboring under such a hardship as to be in dire and immediate need of the proceeds. She already spent the money. Her affidavits made for two other applications presently before the court assert that she used the $25,000 she received herein to pay off debts and credit cards, but this was not enough to set up a financial cushion for herself.
• Whether the payee has obtained independent counsel regarding the financial consequences of the proposed transfer. She did not.
• The level of financial sophistication or lack thereof of the payee. Unfortunately, the fact that the payee is making this application so soon after she received the lump-sum settlement on September 22, 2011 shows a lack of the level of financial sophistication necessary to make good decisions about her finances.
*845 • The timing of the application vis-á-vis any other scheduled payments. This was her first such application, and her affidavit in support was executed just a little over a year after she received the lump sum of $202,513.86, minus any amounts, if any, that had been used for her medical expenses in the eight months prior to September 22, 2011.
• Judge Larimer’s order and the underlying settlement agreement’s requirement that the payee show extreme, unforeseen and uncontemplated financial hardship. The parties have not addressed this requirement in their papers. Therefore, the transfer which already occurred contravenes the order of a court, in violation of General Obligations Law § 5-1706 (d). Still the court may determine that Erika Hall’s (1) losing $15,000 by loaning money to friends, who never paid her back; (2) spending $60,000 on four automobiles; (3) having her ex-boyfriend steal at least $5,000 from her; and (4) purchasing a home with a mortgage, when she does not have enough funds to make the payments, caused her extreme financial hardship. However, in the case at bar, the court concludes that such hardship was not unforeseen and uncontemplated. Such hardship is the exact reason for having a structured settlement instead of an outright award in a personal injury settlement and why the federal court imposed the restrictions it did in the settlement order.
• The failure of petitioner to provide satisfactory proof that the payee received the disclosure statement at least 10 days before she signed the agreement for the transfer. (General Obligations Law § 5-1706 [a].)
• The failure of the payee to satisfactorily explain how much money she received when she turned 18, and how that money was spent, including the specifics of the purchase of the home (the date of transfer, the purchase price, the names of the sellers, buyers, mortgage holders, and any other parties to the transaction, and the specifics of such transaction, including copies of all documents in regard thereto); the loans she made (including to whom she made them, how much for each loan, whether she obtained *846 promissory notes or other indicia of the debts owed to her, and the status of repayment of those debts, including any legal proceedings she may have initiated in regard to obtaining repayment); the circumstances of the boyfriend’s stealing (his name, how much was stolen through use of her credit card and/or other means, when, whether she made any criminal complaints regarding her ex-boyfriend stealing from her, and whether she has taken any steps to recover the stolen amounts, including through civil actions against the boyfriend); and the status of the four vehicles she purchased (make, model and year of the four vehicles she purchased, whether she paid cash or financed them, whether she still owns any of them, if so, which ones, whether she took any action against the seller, or anyone, in regard to her assertion that two of them were “lemons,” if she transferred any of them, and the terms of the transfer, including any amount she received when they were transferred, or if they were given away by her).
• The failure of the petitioner to satisfactorily explain, in the initial petition, the reasons why the application was being made after the funds had been distributed to the payee. The court was apprised of the fraud only after the submission by John Hancock. Although the fraud perpetrated on the court and parties herein by a rogue employee of the Paris & Chaikin firm is not a factor contemplated by the Structured Settlement Protection Act, the court cannot ignore it.
Thus this court cannot conclude that the transfer is in the payee’s best interest, even if the court determined that the discount rate used to determine the gross advance amount was fair and reasonable, including the fact that the payee would not pay any fees and expenses. (General Obligations Law § 5-1706 [b].)
Even if all the parties herein agree to an order confirming the transfer that has already occurred, the court must still exercise its independent judgment in determining the application herein, and, in doing so, determines that it must deny the application. The court notes that General Obligations Law § 5-1708 (a) *847 provides: “The provisions of this title may not be waived by any payee.”[3]
The application is not authorized by statute, and contravenes an applicable statute, i.e., General Obligations Law § 5-1706 which states:
“No direct or indirect transfer of structured settlement payment rights shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment directly or indirectly to any transferee of structured settlement payment rights unless the transfer has been authorized in advance in a final order of a court of competent jurisdiction based upon express findings by such court” (emphasis added).
The court determines that the petitioner has not met its burden of showing that it has complied with the statutory requirements of General Obligations Law, article 5, title 17 in that petitioner did not prove that the disclosure statement was received by the payee at least 10 days before she signed the contract, and the transfer contravenes the order of the court that approved the infant settlement. The court also concludes that the transaction is not fair and reasonable in all respects as it is tainted by fraud.
Therefore, it is ordered that the application is in all respects denied, with prejudice.

. John Hancock is prepared to waive the anti-assignment language in the underlying structured settlement agreement and related contracts and to abide by an appropriate final order if this court should determine that all of the requirements of the Structured Settlement Protection Act (General Obligations Law, art 5, tit 17) have been met. Such waiver is part of a negotiated *842 proposed form order to be submitted at a later date in connection with this particular petition and is without prejudice to John Hancock’s rights in connection with any other petition and litigation.

. The court has before it two additional applications by this petitioner and this payee seeking transfers of $25,200 in exchange for a lump-sum payment of $7,000 in one case and $36,095.04 in exchange for a lump-sum payment of $12,500 in another.

. See also General Obligations Law § 5-1709 (b) (“Any payee injured by a violation of this title may bring an action for the recovery of damages. The court may award reasonable attorney’s fees to the prevailing plaintiff”).